**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, and its agent, Cecil Shuey; Local 60, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, and its agents, Chester Bereman and Paul Bear; and Carpenters District Council, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, and its agent, R. R. Smith, Respondents.**

**No. 12279.**

United States Court of Appeals
Seventh Circuit.

Nov. 10, 1958.

Thomas J. McDermott, Associate Gen. Counsel, Arnold Ordman, Atty., National Labor Relations Board, Washington, D. C., Jerome D. Fenton, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Franklin C. Milliken, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Lester Asher, Chicago, Ill., Francis X. Ward, William A. McGowan, Indianapolis, Ind., for respondents.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The National Labor Relations Board, herein called the Board, petitions us to enforce its order of February 5, 1958, issued against respondents [1] in an unfair labor practice proceeding.

Early in 1956, John Sexton and Co. engaged J. Emil Anderson and Son, Inc., to build an addition to its plant. Anderson subcontracted the major construction work to Fruin-Colnon Contracting Company and subcontracted certain tank work to Wendnagel & Company, including the manufacture and erection of an outside wooden tank. Fruin-Colnon employs members of Carpenters Local 60, a respondent, herein called the Carpenters; Wendnagel is under contract with Local 67 of the Coopers International Union of North America, AFL-CIO, and employs members of that union, herein called the Coopers.

The contract between Wendnagel and the Coopers does not assign and is not an agreement to assign the disputed work (erection of tanks or towers) to members of the Coopers. Rather, it provides that in localities where the Coopers have no membership the disputed work may be carried on with such men as are available, with union preference, provided one member of the Coopers is employed.

Wendnagel's principal plant is in Chicago, Illinois. The work dispute arose in Indianapolis, Indiana. It is not denied that the Wendnagel employees assigned to the disputed work were employees of Wendnagel in Chicago. There is no evidence that the Coopers had any members in the locality of Indianapolis.

On April 10, 1956, Wendnagel's employees began to erect an outside wooden tank. Paul Bear, steward of Carpenters Local 60 and a carpenter employee of Fruin-Colnon, telephoned the local's business agent, Chester A. Bereman, and asked him to investigate the job because Wendnagel was installing the tank without carpenters. Bereman promptly came to the job site, looked the tank over, and then telephoned Cecil Shuey, representative of respondent Carpenters' International. Acting pursuant to Shuey's instructions, Bereman then told Wendnagel foreman Charles Wawak that the work on the tank belonged to the Carpenters. Wawak offered to do the job with a composite crew of carpenters and coopers but Bereman, after further advice from Shuey, rejected the compromise and stated that, if the Coopers went on the job, the Carpenters would not work at the job site. Bereman then instructed steward Bear to pull the Carpenters off the job the next morning if the Coopers resumed work on the tank.

Bereman also told Pierson, vice-president of Fruin-Colnon, of the Carpenters' decision to quit work unless given the tank job. Pierson and Bereman then drove to the office of Shuey who reiterated that the Carpenters would not work alongside the Coopers. Pierson trans-

1. For the Board's Decision and Order, see 119 NLRB No. 184. Its earlier Decision for Determination of Dispute, hereinafter referred to, may be found at 116 NLRB 1063.

mitted this information to the prime contractor, Anderson, who in turn urged Wendnagel to straighten the matter out so that the employees of Fruin-Colnon, members of the Carpenters, would not be pulled off the job. Later that day, Wendnagel's attorney, John T. Van Aken, called Shuey and repeated foreman Wawak's earlier offer to compromise the dispute by hiring carpenters to work with Wendnagel's coopers. He reminded Shuey that past disputes between the Carpenters and the Coopers had been so handled. Shuey insisted, however, that except for supervision, the work had to be done exclusively by carpenters. The next morning, April 11, the Coopers resumed work on the wooden tank and steward Bear ordered Fruin-Colnon's carpenters off the job.

Sometime between April 11 and April 18, 1956, R. R. Smith, president of the respondent Carpenters' District Council, offered to call off the strike if certain millwright work on the job site was given to members of the Carpenters. Nothing came of this offer and on April 17, the Carpenters received notice of the unfair labor practice charges filed by Wendnagel in this case. Thereupon, pursuant to advice from Shuey, Bereman and Smith directed steward Bear to put the Carpenters back to work. The Carpenters reported for work the next morning and the Coopers completed the tank work.

Respondents in this court contend that the record establishes that respondents' object in removing members of respondent Local 60 employed by Fruin-Colnon from their jobs was to obtain assignment of the disputed work by Wendnagel to members of respondent Local 60 and further that there is no evidence in the record of any other object of respondents, and in particular there is no evidence that respondents had as an object the replacement of Wendnagel as a subcontractor on the job.

The unfair labor practice charges filed in April 1956 alleged that respondents and their named agents had violated section 8(b)(4)(D), 29 U.S.C.A. § 158(b)(4)(D), the "jurisdictional disputes" section, as well as section 8(b)(4)(A), the "secondary boycott" section, of the Act.

Pursuant to the statutory scheme for the handling of jurisdictional disputes, the Board in June 1956 held the hearing prescribed by section 10(k), 29 U.S.C.A. § 160(k) "to hear and determine the dispute" out of which the charge of a section 8(b)(4)(D) violation arose.

On the basis of the foregoing facts, the Board found that the record "does not show that Wendnagel's assignment of the wooden tank work was in contravention of any Board order or certificate; nor does it show that the Carpenters had any bargaining contract with Wendnagel which would entitle the Carpenters to represent such employees", and that, on the contrary, "Coopers, whose members were employd by Wendnagel, was under contract with Wendnagel as the recognized bargaining representative for these employees."

Under the heading "Merits of the Dispute", the Board said that it is "well established that an employer is free to make work assignments without being subjected to pressures proscribed by section 8 (b)(4)(D), 'unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work.'"

The Board's decision reads in part, as follows:

"We therefore find that the Carpenters was not entitled by means proscribed by section 8(b)(4)(D) to force or require Wendnagel to assign the disputed work to carpenters, to the exclusion of other employees."

Under the heading "Determination of Dispute", the decision reads:

"On the basis of the foregoing findings of fact and upon the entire record in this case, the Board makes the following determination of dispute, pursuant to section 10(k) of the Act.

"1. [Respondents] and their agents, are not and have not been lawfully entitled to force or require

Wendnagel & Company to assign the work of constructing or erecting wood tanks or vats to members of said labor organizations rather than to Wendnagel's own employees.

"2. Within ten (10) days from the date of this Decision and Determination of Dispute, said unions and their agents, as named above, shall notify the Regional Director for the Ninth Region, in writing whether or not they will refrain from forcing or requiring Wendnagel & Company, by means proscribed by Section 8(b)(4) (D) of the Act, to assign the work in dispute to members of the Carpenters rather than to employees of Wendnagel."

The Board's General Counsel filed an amended consolidated complaint charging respondents with unfair labor practices within the meaning of § 8(b)(4)(A) and § 8(b)(4)(D) of the Act. The charges were denied by respondents' answer.

After an interim report was made by a trial examiner, a review was had by the Board, which found that respondents had violated the Act as charged. The Board ordered [2] respondents to cease and desist

"from engaging in, or inducing or encouraging the employees of Fruin-Colnon Contracting Company or the employees of any other employer to engage in, a strike or concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities, or to perform any services where an object thereof is (a) to force Fruin-Colnon Contracting Company or any other employer to cease doing business with Wendnagel & Company or any other employer, or (b) to force or require Wendnagel & Company or any other employer to assign particular work to members of the Respondents rather than to other employees, except insofar as any such action is

permitted under Section 8(b)(4)(D) of the Act."

Section 8(b)(4)(D) of the Act,[3] so far as here relevant, makes it an unfair labor practice for a labor organization or its agents

"to engage in, or to induce or encourage the employees of any employer to engage in, a strike * * * where an object thereof is: * * * forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work * * *."

Section 10(k) [4] of the Act, reads:

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158 (b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."

 1. Insofar as the charge against respondents is based on alleged violation of § 8(b)(4)(D), it was necessary for the Board to hold a hearing as prescribed by § 10(k). This was done. It was necessary that this hearing should culminate

---

2. This is the order which we are asked to enforce.

3. 29 U.S.C.A. § 158(b) (4) (D).
4. 29 U.S.C.A. § 160(k).

in an order determining the dispute out of which the charged violation of § 8(b) (4)(D) arose. N. L. R. B. v. United Ass'n of Journeymen, 3 Cir., 242 F.2d 722, 724.

In deciding whether the Board so determined the dispute, we are required to consider not only the language of § 10(k), but also the relevant rules of the Board.

These rules, which were in effect at the time of the § 10(k) hearing herein,[5] provide, as follows:

"§ 102.73 *Proceedings before the Board; further hearings; briefs; certification.* Upon the close of the hearing, the Board shall proceed * * * to *certify* the labor organization or the *particular* trade, craft, or class of employees, as the case may be, which shall perform the particular work tasks in issue, or to make other disposition of the matter. * *. *

"§ 102.74 *Compliance with certification; further proceedings.* If, after issuance of *certification* by the Board, the parties submit to the regional director satisfactory evidence that they have complied with the *certification,* the regional director shall dismiss the charge. If no satisfactory evidence of compliance is submitted, the regional director may proceed with the charge under paragraph (4)(D) of section 8(b) and section 10 of the act * * *.

"§ 102.75 *Review of certification.* The record of the proceedings under section 10(k) and the *certification* of the Board thereon, shall become a part of the record in such unfair labor practice proceeding and shall be subject to judicial review insofar as it is in issue, in proceedings to enforce or review the final order of the Board under 10(e) and (f) of the act." 29 U.S.C.A.Appendix. (Italics in body of rules supplied for emphasis.)

These rules, insofar as they are consistent with the Act, are embodied in the law governing this case. § 102.73, supra, necessarily required the Board at the close of the § 10(k) hearing to determine the labor organization or the particular trade, craft, or class of employees, as the case may be, which shall perform the particular work tasks in issue. This is true because § 102.73 requires the Board to certify its determination in that respect. While the rule offers an alternative to this certification by the language which permits the Board "to make other disposition of the matter", nothing in the record suggests that the Board attempted or intended to make any disposition of the matter other than to determine it.

It is not disputed that the record fails to show that the Board certified its determination or any other action taken by it upon the close of the § 10(k) hearing.

 While the rationale of its decision is in part reflected by its statement that an employer is free to make work assignments, except as indicated, its Determination of Dispute fails to measure up to its own rule § 102.73, because it does not determine the labor organization or the particular trade, craft, or class of employees, as the case may be, which shall perform the particular work tasks in issue. This rule was as binding upon the Board itself as it was upon any other person or organization.

If it is to be assumed that the Board's determination definitely excluded the use of members of the Carpenters from the work on the tanks or vats, the order in the § 10(k) proceeding lacks clarity in identifying who should perform the work. In effect, it excludes the Carpenters from the work and only obliquely suggests by the language "rather than to Wendnagel's own employees", who should do the work. Are these to be union men? Are they to be members of any particular union? Are they to be coopers? Could they be maintenance men, bricklayers, clerks, etc.?

5. 29 C.F.R., 1957 Supp., Rules and regulations, Series 6. [Revised] §§ 102.73, 102.74 and 102.75.

An order under § 10(k) must be clear and specific and actually be certified in such form, before a violation of § 10(k) based upon such order will constitute an unfair labor practice. Such an order must be complete in itself; its incompleteness cannot be overcome by a resort to the reasoning of the decision which led to its entry.

Believing that the Board has not complied with § 10(k) and its own rules applicable thereto, we hold that no violation of § 8(b)(4)(D) was established in this case.

■ 2. In the order which we are now asked to enforce, the Board also concluded, contrary to the trial examiner, that respondents had violated § 8(b)(4) (A) of the Act.

In support of the Board's petition, it relies on the following part of § 8(b)(4) (A), which makes it an unfair labor practice for a labor organization or its agents

—

"to engage in, or to induce or encourage the employees of any employer to engage in, a strike * * * where an object thereof is: (A) forcing or requiring * * * any employer or other person * * * to cease doing business with any other person."

We now state the Board's argument.

Respondents' sole quarrel was with Wendnagel because Wendnagel refused to employ members of the Carpenters to perform the work called for by its subcontract. Respondents had no quarrel with Fruin-Colnon. Nevertheless, respondents brought about a cessation of the latter's operations and inevitably involved both Fruin-Colnon and Anderson, the prime contractor responsible for the completion of the project, in a controversy in which they had no part. It is of no moment whether respondents' ultimate goal in calling the strike was to bring pressure upon Wendnagel through Fruin-Colnon and Anderson to reassign the tank work to members of the Carpenters or whether the ultimate goal was to replace Wendnagel with a different subcontractor who would utilize members of the Carpenters. In either case the statutory prerequisites for a § 8(b)(4)(A) violation are satisfied.

However, we fail to find any evidence that the object of respondents was to force Anderson to replace Wendnagel with a different subcontractor who would use members of the Carpenters. The Board in this case said that

"the record in fact clearly indicates that the Respondents alternatively intended their strike against Fruin to be the means of forcing Wendnagel's replacement. Thus the Respondents at all times insisted that their members would not work so long as Wendnagel's Coopers remained on the job."

There is no evidence in the record that respondents ever requested or suggested Wendnagel's replacement. It is true that the evidence shows that respondents insisted that their members would not work so long as *Wendnagel's coopers* remained on the job, but that is quite a different thing from their insisting that they would not work so long as *Wendnagel* remained on the job. In short, there is no evidence [6] to justify the Board's conclusion that the above-quoted language from § 8(b)(4)(A) was violated by respondents.

The Board is mistaken in relying on N. L. R. B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284. In that case there was a long standing labor dispute between the Building Council and Gould & Preisner due to the latter's practice of employing *non-union* men on construction jobs in Denver. Doose & Lintner was the general contractor for the construction of a commercial building. Gould & Preisner was a subcontractor thereon and its employees were the only non-union workmen on the project. The Building Council commenced a strike at the project and Doose & Lintner notified Gould & Preisner to get off the job. Its

---

6. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

workmen were denied entrance. On charges by Gould & Preisner, the Board issued a complaint against respondents, alleging that the object of the strike was to force the general contractor to cease to do business with Gould & Preisner on that project. The court said, at page 688 of 341 U.S., at page 951 of 71 S.Ct.:

"The only way that respondents could attain their purpose was to force Gould & Preisner itself off the job. This, in turn, could be done only through Doose & Lintner's termination of Gould & Preisner's subcontract. The result is that the Council's strike, in order to attain its ultimate purpose, must have included among its objects that of forcing Doose & Lintner to terminate that subcontract."

And, in conformity with a Board finding, the court said at page 689 of 341 U.S., at page 951 of 71 S.Ct.:

"It was an object of the strike to force the contractor to terminate Gould & Preisner's subcontract."

In contrast, in the case at bar we are not dealing with a non-union subcontractor. Wendnagel's coopers are union men. No reason existed in the case at bar for the replacement of Wendnagel, and respondents never demanded it. That was not their object in striking against Fruin-Colnon. They demanded only that members of Carpenters be employed by Wendnagel on the work in question rather than members of Coopers. That was their object in striking against Fruin-Colnon. They believed that their strike, by means of Anderson's influence over Wendnagel, would cause the replacement of the coopers by respondents' carpenters.

In Douds v. International Longshoremen's Ass'n, 2 Cir., 224 F.2d 455, 459, Judge Hand said:

" * * * The 'object' of an action is the concluding state of things that the actor seeks to bring about: that which satisfies his aim. Hence it is a term relative to the whole sequence of steps that he proposes;

and it does not apply to those that are only intermediate to it. * * "

For the reasons herein set forth, we hold that the Board's order of February 5, 1958 is not supported by the record before us and that we would not be justified in enforcing it. That order is set aside. 29 U.S.C.A. § 160(e).

Enforcement refused and order set aside.